**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| Abaco Drilling Technologies LLC, | CIVIL ACTION NO. 4:20cv1946 |
| *Plaintiff*, | JURY TRIAL DEMANDED |
| v. | |
| PV Fluid Products, Inc. and Gary Stephen Kyker (d/b/a Elastomer Consulting LLC), | |
| *Defendants*. | |

## PLAINTIFF ABACO DRILLING TECHNOLOGIES LLC'S ORIGINAL COMPLAINT

Plaintiff Abaco Drilling Technologies LLC ("Abaco") files this Original Complaint against PV Fluid Products, Inc. ("PV Fluid") and Dr. Gary Stephen Kyker d/b/a Elastomer Consulting LLC ("Dr. Kyker") (collectively, the "Defendants"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

### PARTIES

1.      Plaintiff Abaco Drilling Technologies LLC is a limited liability company formed under the laws of the State of Delaware, with its principal place of business at 713 Northpark Central Drive, Houston, TX 77073.

2.      Defendant PV Fluid Products, Inc. is a corporation organized and existing under the laws of the State of Texas, with its corporate headquarters located at 11901 Cutten Road, Houston, Texas 77066.  Defendant PV Fluid Products, Inc. may be served with process by serving its registered agent, Callin C. Kerr, at 15740 Tuckerton Road, Houston, TX 77095.

3.     On information and belief, Defendant Dr. Gary Stephen Kyker is an individual residing in Tyler, Texas, and Elastomer Consulting LLC is a limited liability company with a business address of 16253 CR 1130 Flint, Texas 75762.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over this action under 18 U.S.C. § 1836(c), 28 U.S.C. §§ 1331, 1338, and 35 U.S.C. §  256.

5.     The Court has supplemental jurisdiction over Abaco's state law claims pursuant to 28 U.S.C. § 1367 because Abaco's state law claims form part of the same case or controversy and derive from a common nucleus of operative facts as the claims within the Court's original jurisdiction.

6.     The Court has specific personal jurisdiction over Defendants because this dispute arises from an agreement that was executed and performed in Texas, as well as conduct of Defendants that occurred in Texas.

7.     The Court has general personal jurisdiction over Defendants because they are both residents of the State of Texas, and they both systematically and continuously conduct business in Texas.

8.     The Court may declare the rights and other legal relations of the parties pursuant to 28 U.S.C. §§2201(a) and 2202 because there is a case of actual controversy within the Court's jurisdiction.

9.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c).

## BACKGROUND

10.     Since 2010, Abaco (formerly Basintek, LLC ("Basintek")) has been in the business of developing, marketing, and selling technological advances in manufacturing, quality control,

research and development, and customer service related to downhole motors consisting of rotors and stators for use in the subterranean drilling industry.

11.     Abaco develops stator compounds[1] for use in downhole motors used in oil and gas drilling operations.  Abaco has an established team of chemists, scientists, technicians, and engineers dedicated to the development of cutting-edge stator compound formulas.

12.     In 2012, Abaco sought to add to its range of commercially available stator compound formulas and enhance the reliability and performance of its stators.  Abaco entered into a consulting agreement (the "Consulting Agreement") with Dr. Kyker (d/b/a Elastomer Consulting LLC),[2] a self-employed elastomer compound consultant with a Ph.D. in inorganic chemistry, on May 7, 2012.  Under the terms of the Consulting Agreement, Dr. Kyker was hired to assist Abaco in its development of "elastomer compounds for use in the oil/gas well drilling motor stator component of power sections. . . ."  To be clear, Abaco hired Dr. Kyker to collaborate with Abaco employees—not to work in isolation.  Thus, Abaco modified the Consulting Agreement to make clear that Dr. Kyker would "assist in development of" the stator compounds.

Project instructions for CONSULTANT:                           PJH        5/9/2012

CONSULTANT shall develop *ASSIST IN DEVELOPMENT OF* two elastomer compounds for use in the oil/gas well drilling motor stator component of power sections as follows: (1) a standard NBR type; and, (2) a higher performance NBR type.  The compounds are to meet or exceed the material properties specified by

13.     Abaco took numerous measures to protect the work that Dr. Kyker would help Abaco develop from disclosure or use outside Abaco, including from use by Dr. Kyker.  For example, Abaco imposed technological constraints, required adherence to internal security

---

[1] In oil and gas drilling, the downhole motor assembly typically includes a rotating shaft ("rotor") that is housed inside of a stator.  The stator includes an elastomeric lining that is optimally in direct contact with the rotor.  That lining made from an elastomer is commonly referred to as a "stator compound."  The stator compound must be specially formulated to resist deterioration caused by downhole conditions, while also withstanding the movement of the rotor.
[2] Any references to Dr. Kyker refer to him individually and Elastomer Consulting LLC.

procedures, created physical security measures, and entered into confidentiality agreements that prohibited unauthorized use or disclosure of Abaco's information.  Abaco also employed strong protections in the Consulting Agreement.  First, the Consulting Agreement's ownership provision made clear that Abaco would own *everything* Dr. Kyker might invent or discover, and explicitly required him to disclose and assign Abaco all inventions:  "(a) CONSULTANT shall keep complete records of his/her work activities, including accounts, data, memoranda, charts, graphs, drawings, and other documents or copies thereof which shall be promptly delivered to BASINTEK.  All materials prepared by CONSULTANT for BASINTEK shall be owned exclusively by BASINTEK and shall be deemed works for hire.  (b) CONSULTANT shall promptly disclose and assign to BASINTEK all discoveries, inventions, ideas, or techniques made by CONSULTANT in the performance of the services.  All such inventions shall be the exclusive property of BASINTEK.  CONSULTANT agrees to execute such documents and provide such assistance at BASINTEK'S expense" (hereinafter, the "Ownership Provision").

14.     The Consulting Agreement also included a confidentiality provision that broadly defined material within its ambit and prohibited Dr. Kyker from disclosing such information without Abaco's express consent, even to employees within Abaco:  "BASINTEK's Confidential Information shall include all data, designs, drawings, specifications, trade secrets, communications and other information, revealed or disclosed in any form or manner to CONSULTANT by BASINTEK, whether written, oral, electronic, visual, graphic, photographic, observational, or otherwise, and documents supplied, or produced or created by CONSULTANT for BASINTEK for use in fulfilling this agreement . . . . .CONSULTANT shall hold BASINTEK's Confidential Information in strict confidence, and shall not disclose any BASINTEK's Confidential Information to any third party without the prior written consent of BASINTEK.  CONSULTANT shall only

disclose BASINTEK's Confidential Information internally within CONSULTANT's organization on a need-to-know basis and then only to persons under written nondisclosure and non-use provisions to CONSULTANT at least as restrictive as those set forth herein."

15.     The confidentiality provision also precluded Dr. Kyker from using Abaco's Confidential Information except as expressly authorized under the Consulting Agreement: "CONSULTANT shall further not use BASINTEK's Confidential Information except internally within CONSULTANT's organization, and solely for the purpose of fulfilling the Agreement, or manufacturing of the Goods on behalf of BASINTEK under the Agreement."  Further, the Consulting Agreement required Dr. Kyker to "comply with all security provisions" on Abaco's premises, and to "comply with all applicable laws and regulations."

16.     Crucially, the Consulting Agreement required Dr. Kyker to return all Confidential Information, along with all copies in whatever form, to Abaco at the end of his employment.  Dr. Kyker represented and warranted that he would not keep "any documents, drawings, computer files or any other information, regardless of form, and whether confidential or not, concerning the business or operations" of Abaco, "whether such information was provided by BASINTEK to CONSULTANT, or derived by CONSULTANT based upon BASKINTEK's Confidential Information" (hereinafter, the provisions in paragraphs 13 through 15 will be referred to as the "Confidentiality Provision").

17.     With the understanding that Dr. Kyker would abide by these provisions, Abaco paid Dr. Kyker significant compensation over the course of six months, under the terms of the Consulting Agreement.

18.     Over the course of the six months, Dr. Kyker collaborated with Abaco's established team of chemists, scientists, technicians, and engineers to develop new stator compounds.

19.     One such jointly developed stator compound was named "N80-25."  N80-25 was made for use in a downhole motor or pump having a stator liner.  The N80-25 compound was included in a collection of formulas that Dr. Kyker provided to Abaco in September of 2012 under the terms of the Consulting Agreement.  Abaco understood that it was the only entity to whom Dr. Kyker had disclosed N80-25.  At the time, the formula for N80-25 was not generally known, available, or in the public domain.  In addition, the formula for N80-25 was not known to or in the possession of Dr. Kyker prior to the performance of services under the Consulting Agreement.

20.     N80-25 is a stator compound including an acrylonitrile butadiene isoprene rubber (NBIR) polymer elastomeric base, wherein the NBIR polymer elastomeric base is 100% non-hydrogenated.  Stator compounds featuring a 100% non-hydrogenated NBIR polymer elastomeric base often display improved mechanical properties, including increased strength and rigidity, as compared to stator compounds featuring other polymer elastomeric base materials.

21.     By no means did Dr. Kyker create N80-25 alone.  On the contrary, Abaco not only provided the materials and resources to develop it, but Abaco employees collaborated with Dr. Kyker to develop the concepts.  In fact, Abaco employees conceived of or contributed to several of the key features of the N80-25 formula.  The following sub-paragraphs describe some of the features of the N80-25 formula, including some of the features that Abaco employees helped develop, but that Dr. Kyker would later claim as his own inventions:

        a.      a stator compound, such as the N80-25 compound, that would use an NBIR polymer elastomeric base, wherein the acrylonitrile butadiene isoprene polymer elastomeric base is 100% non-hydrogenated.

        b.      a stator compound, such as the N80-25 compound, containing a high reinforcing carbon black and a semi-reinforcing carbon black selected such that the stator

compound has a tensile strength from about 800 to about 2000 psi, an elongation from about 125 to about 300%, and a 25% modulus from about 250 to about 600 psi, when measured at 121° C.

c. a stator compound, such as the N80-25 compound, containing a high reinforcing carbon black with a surface area of about 80 to about 250 (Iodine # mg/g) and a structure of about 70 to about 178 (DBP Absorption-cc/100 g).

d. a stator compound, such as the N80-25 compound, containing a semi-reinforcing carbon black with a surface area of about 20 to about 50 (Iodine # mg/g) and a structure of about 60 to about 125 (DBP Absorption-cc/100 g).

e. a stator compound, such as the N80-25 compound, containing a high reinforcing carbon black and a semi-reinforcing carbon black further selected to provide tear characteristics at 121° C. including Die C of about 50 ppi to about 200 ppi and trouser of about 5 ppi[3] to about 100 ppi[3].

f. a stator compound, such as the N80-25 compound, containing an NBIR polymer elastomeric base with a Mooney viscosity range of about 30 to about 85 and an acrylonitrile content range of about 28 to about 50.

g. a stator compound, such as the N80-25 compound, containing at least one plasticizer selected from the group consisting of polymeric and ester plasticizers.

h. a stator compound, such as the N80-25 compound, containing an acrylonitrile butadiene isoprene rubber (NBIR) polymer elastomeric base that has an isoprene content nominally in the range of 5-50%.

i. a stator compound, such as the N80-25 compound, made using the following method: during a first mixing stage, mixing a high reinforcing carbon black with

an acrylonitrile butadiene isoprene rubber (NBIR) terpolymer elastomeric base, which has not been hydrogenated, at a temperature below about 300 degrees Fahrenheit without curing agents to produce a mixture; allowing the mixture to cool to ambient temperature; and during a second mixing stage, mixing curing agents into the mixture.

   j. a stator compound, such as the N80-25 compound, made using the following method: during a first mixing stage, mixing a high reinforcing carbon black with an acrylonitrile butadiene isoprene rubber (NBIR) terpolymer elastomeric base, which has not been hydrogenated, with zinc oxide, stearic acid, and hexamethylene tetraamine at a temperature below about 300 degrees Fahrenheit without curing agents to produce a mixture; allowing the mixture to cool to ambient temperature; and during a second mixing stage, mixing curing agents into the mixture.

   k. a stator compound, such as the N80-25 compound, made using the following method: during a first mixing stage, mixing a high reinforcing carbon black with an elastomeric base at a temperature below about 300 degrees Fahrenheit without curing agents to produce a mixture, wherein the elastomeric base has one or more rubber components, wherein the only rubber components of the elastomeric base are acrylonitrile butadiene isoprene rubbers (NBIR); and during a second mixing stage, mixing curing agents into the mixture.

22. Like Dr. Kyker was required to do under the Consulting Agreement, Abaco employees were, and still are, required to assign their interest in inventions made for, or on behalf of, Abaco to Abaco.

23. The Consulting Agreement was set to expire on November 7, 2012 (though the prohibitions on the use and disclosure of information would "continue regardless of the

termination"). Yet in October, after Dr. Kyker and Abaco jointly developed N80-25, Dr. Kyker inquired about terminating the Consulting Agreement. Although Abaco found this strange, it felt confident that the ownership and confidentiality provisions in the Consulting Agreement would protect all inventions developed in the course of Dr. Kyker's employment. Abaco therefore carried on with normal operations, unaware of what Dr. Kyker and PV Fluid were doing.

24.     Abaco later learned why Dr. Kyker was so anxious to exit the consulting arrangement early: Dr. Kyker wanted to work with PV Fluid to develop products that would directly compete with Abaco. But not until December of 2017 did Abaco discover the scope of Dr. Kyker's misappropriation. Specifically, when reviewing research and development on a different technology, Abaco employees discovered that Dr. Kyker had filed several patents assigned to PV Fluid that resembled work developed in the course of Dr. Kyker's engagement with Abaco. Given the particular type of Abaco's business, it did not monitor (nor should it have had to) all patent applications filed that tangentially involved any compound any of its consultants had ever helped develop, which would cost significant time and resources to do. Abaco instead protected its trade secrets through the measures described above, including the Consulting Agreement. As a result, it had no reason to monitor Dr. Kyker's patent filings. Moreover, a co-inventor had left Abaco in 2012 and retired. Thus, the injury resulting from Dr. Kyker's and PV Fluid's misappropriation of Abaco's invention was inherently undiscoverable. Not until December 2017 when Abaco discovered the patent filing was the disclosure, misappropriation, and use of Abaco's trade secrets apparent.

25.     After learning of Dr. Kyker's patent filings, an Abaco employee conducted a technical analysis and determined that the disclosures in PV Fluid's patents were the same as the

N80-25 formula.   After further research and investigation, Abaco learned the following information:

a.      On November 13, 2015, Dr. Kyker filed U.S. Patent Application No. 14/941,240, naming Dr. Kyker as the sole inventor and PV Fluid as the sole assignee. Following prosecution, the United States Patent and Trademark Office issued U.S. Patent No. 9,796,834 (the "'834 patent") on October 24, 2017.

b.      The '834 patent claims the properties, components and formula of N80-25, based on work done by Dr. Kyker under the Consulting Agreement for Abaco, and includes claim elements of which one or more Abaco employees contributed to the conception.

c.      On January 24, 2017, Dr. Kyker filed U.S. Patent Application No. 15/414,488, naming Dr. Kyker as the sole inventor and PV Fluid as the sole assignee. Following prosecution, the United States Patent and Trademark Office issued U.S. Patent No. 9,796,835 ("the '835 patent") on October 24, 2017.

d.      The '835 patent claims the properties, components and formula of N80-25, based on work done by Dr. Kyker under the Consulting Agreement for Abaco, and includes claim elements of which one or more Abaco employees contributed to the conception.

e.      On January 24, 2017, Dr. Kyker filed U.S. Patent Application No. 15/414,494, naming Dr. Kyker as the sole inventor and PV Fluid as the sole assignee. Following prosecution, the United States Patent and Trademark Office issued U.S. Patent No. 9,988,513 ("the '513 patent") on June 5, 2018.

f.      The '513 patent claims the properties, components and formula of N80-25, based on work done by Dr. Kyker under the Consulting Agreement for Abaco, and includes claim elements of which one or more Abaco employees contributed to the conception.

g.      On May 21, 2018, Dr. Kyker filed U.S. Patent Application No. 15/985,117 naming Dr. Kyker as the sole inventor and PV Fluid as the sole assignee.  Following prosecution, the United States Patent and Trademark Office issued U.S. Patent No. 10,442,916 ("the '916 patent") on October 15, 2019.

h.      The '916 patent claims the properties, components and formula of N80-25, based on work done by Dr. Kyker under the Consulting Agreement for Abaco, and includes claim elements of which one or more Abaco employees contributed to the conception.

26.     Abaco discovered that Dr. Kyker had filed these patents in his own name.  Dr. Kyker assigned the patents to PV Fluid, allowing PV Fluid to incorporate the patents into its products to compete with Abaco and garner a significant profit, despite the fact that all inventions derived during the course of Dr. Kyker's employment were required to be assigned to Abaco under the Consulting Agreement.

27.     Upon information and belief, Dr. Kyker disclosed the N80-25 formula and other Abaco Confidential Information (as that term is defined in the Consulting Agreement) to PV Fluid, and PV Fluid and Dr. Kyker jointly used that information to develop products for PV Fluid and obtain patents from the United States Patent and Trademark Office.

28.     On information and belief, PV Fluid was aware of Dr. Kyker's previous relationship and work with Abaco, and was aware that Dr. Kyker had obligations of confidence to Abaco and that Abaco would own Dr. Kyker's work on behalf of Abaco, but nonetheless acquired and used Abaco's intellectual property and Confidential Information (including stator compound information) for its own benefit.

29.     Upon information and belief, PV Fluid commercialized products that include Abaco's Confidential Information, including information taken from the N80-25 formula.

30.     Upon information and belief, PV Fluid has gained significant market share in the oilfield industry, in direct competition with Abaco, and has taken market share from Abaco using intellectual property misappropriated from and exclusively owned by Abaco.

## DISCOVERY RULE

31.     Abaco pleads that it did not know and could not have known about the facts giving rise to its causes of action before it actually learned of such facts in December 2017, as more fully set forth in this Complaint.

## THE TECHNOLOGY

32.     U.S. Patent Nos. 9,796,834; 9,796,835; 9,988,513; and 10,442,916 (collectively, the "Patents-in-Suit"), teach a stator compound including an NBIR terpolymer base.  The stator compound is an elastomeric liner for use in downhole motors for use in oil drilling operations.

## COUNT I.

## CORRECTION OF INVENTORSHIP OF UNITED STATES PATENT NO. 9,796,834

33.     Abaco alleges and incorporates by reference the allegations of the above paragraphs.

34.     One or more Abaco employees conceived of and/or contributed to the invention claimed in one or more claims of U.S. Patent No. 9,796,834 ("the '834 patent"), and such contributions were significant when viewed in light of the full invention of the '834 patent.

35.     One or more Abaco employees (the "omitted inventors") should have been included as named inventors of the '834 patent, but were improperly omitted as named inventors by Dr. Kyker and PV Fluid.

36.     The omitted inventors had an obligation to assign their patent rights to Abaco, and therefore, Abaco has interest in having the omitted inventors correctly listed on the '834 patent.

37.     Dr. Kyker also conceived of and/or contributed to the invention claimed in one or more claims of the '834 patent and assigned the '834 patent to PV Fluid.  Dr. Kyker was under obligation to assign to Abaco all discoveries, inventions, ideas, or techniques made by Dr. Kyker in the performance of his consulting services for Abaco.

38.     Pursuant to 35 U.S.C. § 256, the Court should order correction of the '834 patent to include the omitted inventors as named inventors.

## COUNT II.

## CORRECTION OF INVENTORSHIP OF UNITED STATES PATENT NO. 9,796,835

39.     Abaco alleges and incorporates by reference the allegations of the above paragraphs.

40.     One or more Abaco employees conceived of and/or contributed to the invention claimed in one or more claims of U.S. Patent No. 9,796,835 ("the '835 patent"), and such contributions were significant when viewed in light of the full invention of the '835 patent.

41.     One or more Abaco employees (the "omitted inventors") should have been included as named inventors of the '835 patent, but were improperly omitted as named inventors by Dr. Kyker and PV Fluid.

42.     The omitted inventors had an obligation to assign their patent rights to Abaco, and therefore, Abaco has interest in having the omitted inventors correctly listed on the '835 patent.

43.     Dr. Kyker also conceived of and/or contributed to the invention claimed in one or more claims of the '835 patent and assigned the '835 patent to PV Fluid.  Dr. Kyker was under obligation to assign to Abaco all discoveries, inventions, ideas, or techniques made by Dr. Kyker in the performance of the consulting services for Abaco.

44.     Pursuant to 35 U.S.C. § 256, the Court should order correction of the '835 patent to include the omitted inventors as named inventors.

## COUNT III.

## CORRECTION OF INVENTORSHIP OF UNITED STATES PATENT NO. 9,988,513

45.     Abaco alleges and incorporates by reference the allegations of the above paragraphs.

46.     One or more Abaco employees conceived of and/or contributed to the invention claimed in one or more claims of U.S. Patent No. 9,988,513 ("the '513 patent"), and such contributions were significant when viewed in light of the full invention of the '513 patent.

47.     One or more Abaco employees (the "omitted inventors") should have been included as named inventors of the '513 patent, but were improperly omitted as named inventors by Dr. Kyker and PV Fluid.

48.     The omitted inventors had an obligation to assign their patent rights to Abaco, and therefore, Abaco has interest in having the omitted inventors correctly listed on the '513 patent.

49.     Dr. Kyker also conceived of and/or contributed to the invention claimed in one or more claims of the '513 patent and assigned the '513 patent to PV Fluid.  Dr. Kyker was under obligation to assign to Abaco all discoveries, inventions, ideas, or techniques made by Dr. Kyker in the performance of the consulting services for Abaco.

50.     Pursuant to 35 U.S.C. § 256, the Court should order correction of the '513 patent to include the omitted inventors as named inventors.

## COUNT IV.

## CORRECTION OF INVENTORSHIP OF UNITED STATES PATENT NO. 10,442,916

51.     Abaco alleges and incorporates by reference the allegations of the above paragraphs.

52.     One or more Abaco employees conceived of and/or contributed to the invention claimed in one or more claims of U.S. Patent No. 10,442,916 ("the '916 patent"), and such contributions were significant when viewed in light of the full invention of the '916 patent.

53.     One or more Abaco employees (the "omitted inventors") should have been included as named inventors of the '916 patent, but were improperly omitted as named inventors by Dr. Kyker and PV Fluid.

54.     The omitted inventors had an obligation to assign their patent rights to Abaco, and therefore, Abaco has interest in having the omitted inventors correctly listed on the '916 patent.

55.     Dr. Kyker also conceived of and/or contributed to the invention claimed in one or more claims of the '916 patent and assigned the '916 patent to PV Fluid.  Dr. Kyker was under obligation to assign to Abaco all discoveries, inventions, ideas, or techniques made by Dr. Kyker in the performance of the consulting services for Abaco.

56.     Pursuant to 35 U.S.C. § 256, the Court should order correction of the '916 patent to include the omitted inventors as named inventors.

## COUNT V.

## DECLARATION OF OWNERSHIP OF UNITED STATES PATENT NO. 9,796,834

57.     Abaco alleges and incorporates by reference the allegations of the above paragraphs.

58.     There is a concrete dispute, and therefore an actual case or controversy, between Abaco and the Defendants regarding the proper ownership of the '834 patent.

59.     As set forth above in Count I, one or more Abaco employees is an omitted inventor of the '834 patent, and Abaco employees had an obligation to assign their patent rights to Abaco.

60.     With one or more Abaco employees as an inventor on the '834 patent, Abaco is entitled to a judgment that Abaco is the sole, rightful owner of the '834 patent.

61.     As set forth above in Count I, Dr. Kyker also conceived of and/or contributed to the invention claimed in one or more claims of the '834 patent and assigned the '834 patent to PV Fluid.  Dr. Kyker was under obligation to assign to Abaco all discoveries, inventions, ideas, or techniques made by Dr. Kyker in the performance of the consulting services for Abaco.

62.     With Dr. Kyker as an inventor on the '834 patent, Abaco is entitled to a judgment that Abaco is the sole, rightful owner of the '834 patent.

63.     Abaco seeks declaratory judgment from this Court that Abaco is the sole, rightful owner of the '834 patent and any applications or patents that relate thereto.

## COUNT VI.

## DECLARATION OF OWNERSHIP OF UNITED STATES PATENT NO. 9,796,835

64.     Abaco alleges and incorporates by reference the allegations of the above paragraphs.

65.     There is a concrete dispute, and therefore an actual case or controversy, between Abaco and the Defendants regarding the proper ownership of the '835 patent.

66.     As set forth above in Count II, one or more Abaco employees is an omitted inventor of the '835 patent, and Abaco employees had an obligation to assign their patent rights to Abaco.

67.     With one or more Abaco employees as an inventor on the '835 patent, Abaco is entitled to a judgment that Abaco is the sole, rightful owner of the '835 patent.

68.     As set forth above in Count II, Dr. Kyker also conceived of and/or contributed to the invention claimed in one or more claims of the '835 patent and assigned the '835 patent to PV Fluid.  Dr. Kyker was under obligation to assign to Abaco all discoveries, inventions, ideas, or techniques made by Dr. Kyker in the performance of the consulting services for Abaco.

69.     With Dr. Kyker as an inventor on the '835 patent, Abaco is entitled to a judgment that Abaco is the sole, rightful owner of the '835 patent.

70.     Abaco seeks declaratory judgment from this Court that Abaco is the sole, rightful owner of the '835 patent and any applications or patents that relate thereto.

## COUNT VII.

## DECLARATION OF OWNERSHIP OF UNITED STATES PATENT NO. 9,988,513

71.     Abaco alleges and incorporates by reference the allegations of the above paragraphs.

72.     There is a concrete dispute, and therefore an actual case or controversy, between Abaco and the Defendants regarding the proper ownership of the '513 patent.

73.     As set forth above in Count III, one or more Abaco employees is an omitted inventor of the '513 patent, and Abaco employees had an obligation to assign their patent rights to Abaco.

74.     With one or more Abaco employees as an inventor on the '513 patent, Abaco is entitled to a judgment that Abaco is the sole, rightful owner of the '513 patent.

75.     As set forth above in Count III, Dr. Kyker also conceived of and/or contributed to the invention claimed in one or more claims of the '513 patent and assigned the '513 patent to PV Fluid.  Dr. Kyker was under obligation to assign to Abaco all discoveries, inventions, ideas, or techniques made by Dr. Kyker in the performance of the consulting services for Abaco.

76.     With Dr. Kyker as an inventor on the '513 patent, Abaco is entitled to a judgment that Abaco is the sole, rightful owner of the '513 patent.

77.     Abaco seeks declaratory judgment from this Court that Abaco is the sole, rightful owner of the '513 patent and any applications or patents that relate thereto.

## COUNT VIII.

## DECLARATION OF OWNERSHIP OF UNITED STATES PATENT NO. 10,442,916

78.     Abaco alleges and incorporates by reference the allegations of the above paragraphs.

79.     There is a concrete dispute, and therefore an actual case or controversy, between Abaco and the Defendants regarding the proper ownership of the '916 patent.

80.     As set forth above in Count IV, one or more Abaco employees is an omitted inventor of the '916 patent, and Abaco employees had an obligation to assign their patent rights to Abaco.

81.     With one or more Abaco employees as an inventor on the '916 patent, Abaco is entitled to a judgment that Abaco is the sole, rightful owner of the '916 patent.

82.     As set forth above in Count IV, Dr. Kyker also conceived of and/or contributed to the invention claimed in one or more claims of the '916 patent and assigned the '916 patent to PV Fluid.  Dr. Kyker was under obligation to assign to Abaco all discoveries, inventions, ideas, or techniques made by Dr. Kyker in the performance of the consulting services for Abaco.

83.     With Dr. Kyker as an inventor on the '916 patent, Abaco is entitled to a judgment that Abaco is the sole, rightful owner of the '916 patent.

84.     Abaco seeks declaratory judgment from this Court that Abaco is the sole, rightful owner of the '916 patent and any applications or patents that relate thereto.

## COUNT IX.

## BREACH OF CONTRACT

85.     Abaco alleges and incorporates by reference the allegations of the above paragraphs.

86.     Dr. Kyker d/b/a Elastomer Consulting LLC and Abaco entered into a valid and enforceable contract—the Consulting Agreement.  The effective date of the Consulting Agreement is May 7, 2012.

87.     As described above, the Consulting Agreement includes a Confidentiality Provision that (among other things) broadly defines the information Dr. Kyker was bound to keep confidential; obligated him to keep such information confidential and not to disclose it; precluded him from using the information except as expressly authorized; and required him to return all information to Abaco upon termination.  Dr. Kyker represented and warranted that he would not keep "any documents, drawings, computer files or any other information, regardless of form, and whether confidential or not, concerning the business or operations" of Abaco, "whether such information was provided by BASINTEK to CONSULTANT, or derived by CONSULTANT based upon BASKINTEK's Confidential Information."

88.     N80-25 and all other material Dr. Kyker helped develop while consulting for Abaco constituted Confidential Information within the scope of the Consulting Agreement.

89.     On or after September 5, 2012, Dr. Kyker disclosed the elastomer and stator compounds claimed in the Patents-in-Suit, which were created pursuant to Dr. Kyker's contractual relationship with Abaco, to PV Fluid—one of Abaco's competitors.  Dr. Kyker and PV Fluid proceeded to use the elastomer compounds and other Confidential Information in its business in violation of the Consulting Agreement.  On information and belief, Dr. Kyker also retained Confidential Information belonging to Abaco in violation of the Confidentiality Provision.

90.     Abaco did not provide prior written consent for the disclosure or use of Abaco's Confidential Information to PV Fluid.  These actions breached the Confidentiality Provision under

the Consulting Agreement, as such compounds were Abaco's Confidential Information and exclusive property under the terms of the Consulting Agreement.

91.     Dr. Kyker also breached the Ownership Provision of the Consulting Agreement. Dr. Kyker disclosed and assigned to PV Fluid discoveries, inventions, ideas, and techniques "prepared by CONSULTANT" in the performance of the Consulting Agreement with Abaco, which should have been "owned exclusively by BASINTEK" and "deemed works for hire."  The failure to "promptly disclose and assign" such discoveries, inventions, and ideas, which were "the exclusive property of BASINTEK," breached the Consulting Agreement.

92.     Abaco fully performed its contractual obligations under the Consulting Agreement.

93.     Dr. Kyker's breach of the Consulting Agreement directly and proximately caused injury to Abaco.  Dr. Kyker's breach of the Consulting Agreement enabled PV Fluid to directly compete with Abaco by manufacturing, using, offering to sell, and/or selling the stator compounds developed by Dr. Kyker, with Abaco's employees, for Abaco, and to make a profit by selling products that incorporated technology that rightfully belonged to Abaco.  Furthermore, Abaco is now unable to manufacture, use, offer to sell, or sell stator compounds developed by and for Abaco, because Dr. Kyker wrongfully assigned the Patents-in-Suit to PV Fluid.

94.     Pursuant to the terms of the Consulting Agreement, Abaco is the exclusive owner of the formulas, information, materials Dr. Kyker provided to Abaco, including the N80-25 formula and any formula or intellectual property (e.g., patents) that is based on the N80-25 formula or work that was done by Dr. Kyker under the Consulting Agreement.  Abaco is therefore entitled to damages caused by Dr. Kyker's breaches, to be proven at trial.   Pursuant to Texas CPRC §§ 38.001, *et. seq.*, Abaco is also entitled to recover its reasonable costs and attorneys' fees.

## COUNT X.

## TRADE SECRET MISAPPROPRIATION UNDER
## THE FEDERAL DEFEND TRADE SECRETS ACT[3]

95.     Abaco alleges and incorporates by reference the allegations of the above paragraphs.

96.     Abaco possesses and uses certain trade secrets and otherwise confidential information to develop stator compounds that give Abaco a competitive advantage over others in the business.  Abaco's trade secrets and confidential information include, but are not limited to, stator compound formulas and methods of making the same, and include the stator compounds, materials and other information provided by Dr. Kyker to Abaco under the Consulting Agreement, which thereby became Abaco's intellectual property (collectively, the "Trade Secrets").

97.     Abaco invested considerable time, effort, and financial resources to develop and protect its Trade Secrets.  In particular, Abaco employed highly credentialed employees and contractors to develop its state-of-the-art Trade Secrets, and devoted years of research and development to these development endeavors.  Moreover, Abaco expends significant amounts annually on security measures to protect its Trade Secrets from disclosure.

98.     The Trade Secrets derive independent economic value from not being generally known or readily ascertainable through proper means, and give Abaco an advantage over others in the marketplace who do not know of or how to use the Trade Secrets.  In particular, Abaco uses the secret stator compound formulas to develop innovative downhole motor assembly equipment that is more durable and reliable than the downhole motor assembly equipment sold by its

---

[3] Abaco alleges this claim to the extent that the misappropriation did not occur until after May 11, 2016.  Abaco cannot make a determination as to the exact date of misappropriation without discovery.

competitors.  Maintaining the secrecy of the stator compound formulas is critical to ensuring that Abaco can outperform its competitors by delivering higher-quality, more reliable products.

99.     Abaco's Trade Secrets are related to a product used in, or intended for use in, interstate or foreign commerce.  Specifically, Abaco incorporates its Trade Secrets into products, including Abaco's HPW Elastomer and HPW Plus Elastomer products, that are sold to drilling companies in numerous states.

100.     Abaco has treated the information as confidential and has protected the information from discovery by third parties.  Abaco takes numerous reasonable measures to protect the secrecy of its Trade Secrets, including technological constraints, contracts, policies, and industry customs and practices.  Abaco routinely enters into confidentiality agreements with employees and contractors.  Abaco protected its Trade Secrets from Dr. Kyker and PV Fluid in particular by entering into the Consulting Agreement with Dr. Kyker, which prohibited unauthorized use or disclosure of Abaco's Confidential Information and required Dr. Kyker to assign all inventions directly to Abaco.  Additionally, Abaco required Dr. Kyker to abide by all security provisions on Abaco's premises.

101.     Abaco has not expressly or impliedly consented to Dr. Kyker's or PV Fluid's use or disclosure of its Trade Secrets.  Dr. Kyker owed Abaco a duty not to disclose or use Abaco's Trade Secrets outside of the narrowly defined scope of the Consulting Agreement.  Indeed, the Consulting Agreement limited Dr. Kyker's disclosure of Trade Secrets even inside Abaco.

102.     In breach of this duty and federal law, Dr. Kyker disclosed and used Abaco's Trade Secrets without Abaco's consent after using improper means to acquire the Trade Secrets, and despite knowing or having reason to know that the Trade Secrets were acquired under circumstances giving rise to a duty to maintain their secrecy or derived from or through a person

who owed a duty to Abaco to maintain secrecy of its trade secrets.  Likewise, PV Fluid acquired and used Abaco's Trade Secrets without Abaco's consent, despite knowing or having reason to know that the Trade Secrets were acquired by improper means or under circumstances giving rise to a duty to maintain their secrecy, or derived from or through a person who owed a duty to Abaco to maintain secrecy of its trade secrets.

103.    As an unavoidable result of Dr. Kyker's and PV Fluid's misappropriation of Abaco's Trade Secrets, Abaco will be irreparably harmed, as the resources it spent to develop the confidential and proprietary Trade Secrets were destroyed and wrongfully given to a competitor. Dr. Kyker and PV Fluid not only destroyed the secrecy of the Trade Secrets by disclosing them in the patents, but used the Trade Secrets to compete with Abaco and profit at Abaco's expense. Furthermore, Abaco is now precluded from manufacturing, using, offering to sell, or selling stator compounds developed by and for Abaco, because Dr. Kyker wrongfully assigned the Patents-in-Suit to PV Fluid.

104.    On information and belief, Dr. Kyker and PV Fluid have used and intend to use Abaco's Trade Secrets in interstate commerce and in violation of the Consulting Agreement and federal law by selling products that incorporate the Patents-in-Suit across state lines.

105.    On information and belief, Dr. Kyker's disclosure and use of Abaco's Trade Secrets, and PV Fluid's acquisition and use of such Trade Secrets, was willful and malicious and entitles Abaco to exemplary damages.

106.    Dr. Kyker's disclosure and use, and PV Fluid's acquisition and use, of such information constitutes a misappropriation of Abaco's Trade Secrets in violation of the U.S. Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq.*

107.    Abaco is entitled to damages for its actual loss or for the Defendants' unjust enrichment, and an injunction enjoining actual and threatened misappropriation and ordering the transfer of the ownership of the Patents-in-Suit, as well as any patent applications related to the Patents-in-Suit, from PV Fluid to Abaco.   Because Dr. Kyker and PV Fluid willfully and maliciously misappropriated Abaco's Trade Secrets, Abaco is also entitled to exemplary damages, costs and reasonable attorneys' fees.

## COUNT XI.

### TRADE SECRET MISAPPROPRIATION UNDER THE TEXAS UNIFORM TRADE SECRETS ACT[4]

108.    Abaco alleges and incorporates by reference the allegations of the above paragraphs.

109.    Additionally and in the alternative to Abaco's claims for common-law misappropriation and violation of the Texas Theft Liability Act, Abaco possesses and uses certain Trade Secrets and otherwise confidential information to develop stator compounds.

110.    Abaco invested considerable time, effort, and financial resources to develop and protect its Trade Secrets.   In particular, Abaco employed highly credentialed employees and contractors to develop its state-of-the-art Trade Secrets, and devoted years of research and development to these development endeavors.   Moreover, Abaco expends significant amounts annually on security measures to protect its Trade Secrets from disclosure.

111.    The Trade Secrets derive independent economic value from not being generally known or readily ascertainable through proper means, and give Abaco an advantage over others in the marketplace who do not know of or how to use the Trade Secrets.   In particular, Abaco uses

---

[4] Abaco alleges this claim in the alternative to its common-law misappropriation and Texas Theft Liability Act claims to the extent that the misappropriation did not occur until after September 1, 2013.  Abaco cannot make a determination as to the exact date of misappropriation without discovery.

the secret stator compound formulas to develop innovative downhole motor assembly equipment that is more durable and reliable than the downhole motor assembly equipment sold by its competitors. Maintaining the secrecy of the stator compound formulas is critical to ensuring that Abaco can outperform its competitors by delivering higher-quality, more reliable products.

112.    Abaco has treated the information as confidential and has protected the information from discovery by third parties. Abaco takes numerous reasonable measures to protect the secrecy of its Trade Secrets, including technological constraints, contracts, policies, and industry custom and practice. Abaco routinely enters into confidentiality agreements with employees and contractors. Abaco protected its Trade Secrets from Dr. Kyker and PV Fluid in particular by entering into the Consulting Agreement with Dr. Kyker, which prohibited unauthorized use or disclosure of Abaco's Confidential Information and required Dr. Kyker to assign all inventions directly to Abaco. Additionally, Abaco required Dr. Kyker to abide by all security provisions on Abaco's premises.

113.    Abaco has not expressly or impliedly consented to Dr. Kyker's or PV Fluid's use or disclosure of its Trade Secrets. Dr. Kyker owed Abaco a duty not to disclose or use Abaco's Trade Secrets outside of the narrowly defined scope of the Consulting Agreement. Indeed, the Consulting Agreement limited Dr. Kyker's disclosure of Trade Secrets even inside Abaco.

114.    In breach of this duty and state law, Dr. Kyker disclosed and used Abaco's Trade Secrets without Abaco's consent after using improper means to acquire the Trade Secrets, and despite knowing or having reason to know that the Trade Secrets were acquired under circumstances giving rise to a duty to maintain their secrecy or derived from or through a person who owed a duty to Abaco to maintain secrecy of its trade secrets. Likewise, PV Fluid acquired and used Abaco's Trade Secrets without Abaco's consent, despite knowing or having reason to

know that the Trade Secrets were acquired by improper means or under circumstances giving rise to a duty to maintain their secrecy, or derived from or through a person who owed a duty to Abaco to maintain secrecy of its trade secrets.

115. As an unavoidable result of Dr. Kyker's and PV Fluid's misappropriation of Abaco's Trade Secrets, Abaco will be irreparably harmed, as the resources it spent to develop the confidential and proprietary Trade Secrets were destroyed and wrongfully given to a competitor. Dr. Kyker and PV Fluid not only destroyed the secrecy of the Trade Secrets by disclosing them in the patents, but used the Trade Secrets to compete with Abaco and profit at Abaco's expense. Furthermore, Abaco is now precluded from manufacturing, using, offering to sell, or selling stator compounds developed by and for Abaco, because Dr. Kyker wrongfully assigned the Patents-in-Suit to PV Fluid.

116. Defendants are in a position to continue to cause harm to Abaco.

117. On information and belief, Dr. Kyker's disclosure and use of Abaco's Trade Secrets, and PV Fluid's acquisition and use of such Trade Secrets, was willful and malicious and entitles Abaco to exemplary damages.

118. Dr. Kyker's disclosure and use, and PV Fluid's acquisition and use, of such information constitutes a misappropriation of Abaco's Trade Secrets and confidential information in violation of the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code § 134A, *et seq*.

119. Abaco is entitled to damages for its actual loss or for the Defendants' unjust enrichment, and an injunction enjoining actual and threatened misappropriation and ordering the transfer of the ownership of the Patents-in-Suit, as well as any patent applications related to the Patents-in-Suit, from PV Fluid to Abaco. Because Dr. Kyker and PV Fluid willfully and

maliciously misappropriated Abaco's Trade Secrets, Abaco is also entitled to exemplary damages, costs and reasonable attorneys' fees.

## COUNT XII.

## COMMON-LAW MISAPPROPRIATION[5]

120.    Abaco alleges and incorporates by reference the allegations of the above paragraphs.

121.    Additionally and in the alternative to Abaco's claims under the DTSA and TUTSA, the Defendants misappropriated Abaco's Trade Secrets under the common law.  Abaco invested considerable time, effort, and financial resources to develop and protect its Trade Secrets.  In particular, Abaco employed highly credentialed employees and contractors to develop its state-of-the-art Trade Secrets, and devoted years of research and development to these development endeavors.  Moreover, Abaco expends significant amounts annually on security measures to protect its Trade Secrets from disclosure.

122.    The Trade Secrets derive independent economic value from not being generally known or readily ascertainable through proper means, and give Abaco an advantage over others in the marketplace who do not know of or how to use the Trade Secrets.  In particular, Abaco uses the secret stator compound formulas to develop innovative downhole motor assembly equipment that is more durable and reliable than the downhole motor assembly equipment sold by its competitors.  Maintaining the secrecy of the stator compound formulas is critical to ensuring that Abaco can outperform its competitors by delivering higher-quality, more reliable products.

---

[5] Abaco alleges this claim in the alternative to its TUTSA and DTSA claims to the extent that the misappropriation occurred before September 1, 2013.  Abaco cannot make a determination as to the exact date of misappropriation without discovery.

123.     Abaco has treated the information as confidential and has protected the information from discovery by third parties.  Abaco takes numerous reasonable measures to protect the secrecy of its Trade Secrets, including technological constraints, contracts, policies, and industry custom and practice.  Abaco routinely enters into confidentiality agreements with employees and contractors.  Abaco protected its Trade Secrets from Dr. Kyker and PV Fluid in particular by entering into the Consulting Agreement with Dr. Kyker, which prohibited unauthorized use or disclosure of Abaco's Confidential Information and required Dr. Kyker to assign all inventions directly to Abaco.  Additionally, Abaco required Dr. Kyker to abide by all security provisions on Abaco's premises.

124.     Abaco has not expressly or impliedly consented to Dr. Kyker's or PV Fluid's use or disclosure of its Trade Secrets.   Dr. Kyker owed Abaco a duty not to disclose or use Abaco's Trade Secrets outside of the narrowly defined scope of the Consulting Agreement.  Indeed, the Consulting Agreement limited Dr. Kyker's disclosure of Trade Secrets even inside Abaco.

125.     In breach of this duty and state law, Dr. Kyker disclosed and used Abaco's Trade Secrets without Abaco's consent after using improper means to acquire the Trade Secrets, and despite knowing or having reason to know that the Trade Secrets were acquired under circumstances giving rise to a duty to maintain their secrecy or derived from or through a person who owed a duty to Abaco to maintain secrecy of its trade secrets.  Likewise, PV Fluid acquired and used Abaco's Trade Secrets without Abaco's consent, despite knowing or having reason to know that the Trade Secrets were acquired by improper means or under circumstances giving rise to a duty to maintain their secrecy, or derived from or through a person who owed a duty to Abaco to maintain secrecy of its trade secrets.

126.     As an unavoidable result of Dr. Kyker's and PV Fluid's misappropriation of Abaco's Trade Secrets, Abaco will be irreparably harmed, as the resources it spent to develop the confidential and proprietary Trade Secrets were destroyed and wrongfully given to a competitor. Dr. Kyker and PV Fluid not only destroyed the secrecy of the Trade Secrets by disclosing them in the patents, but used the Trade Secrets to compete with Abaco and profit at Abaco's expense. Furthermore, Abaco is now precluded from manufacturing, using, offering to sell, or selling stator compounds developed by and for Abaco, because Dr. Kyker wrongfully assigned the Patents-in-Suit to PV Fluid.

127.     Defendants are in a position to continue to cause harm to Abaco.

128.     On information and belief, Dr. Kyker's disclosure and use of Abaco's Trade Secrets, and PV Fluid's acquisition and use of such Trade Secrets, was willful and malicious and entitles Abaco to exemplary damages.

129.     Dr. Kyker's disclosure and use, and PV Fluid's acquisition and use, of such information constitutes a misappropriation of Abaco's Trade Secrets and confidential information.

130.     Abaco is entitled to damages for its actual loss or for the Defendants' unjust enrichment, and an injunction enjoining actual and threatened misappropriation and ordering the transfer of the ownership of the Patents-in-Suit, as well as any patent applications related to the Patents-in-Suit, from PV Fluid to Abaco.   Because Dr. Kyker and PV Fluid willfully and maliciously misappropriated Abaco's Trade Secrets, Abaco is also entitled to exemplary damages and costs.

## COUNT XIII.

## TEXAS THEFT OF LIABILITY ACT[6]

131.    Abaco alleges and incorporates by reference the allegations of the above paragraphs.

132.    Additionally and in the alternative to Abaco's claims under the DTSA and TUTSA, Abaco brings this action under the Texas Theft Liability Act for an unlawful appropriation of property under Texas Civil Practice and Remedies Code § 134 to the extent the Trade Secrets were misappropriated before September 1, 2013.

133.    Abaco was entitled to possession of the Trade Secrets, because under the Consulting Agreement, "[a]ll materials prepared by CONSULTANT for BASINTEK shall be owned exclusively by BASINTEK," and "CONSULTANT shall promptly disclose and assign to BASINTEK all discoveries, inventions, ideas, or techniques made by CONSULTANT in the performance of the services."  Further, "[a]ll such inventions shall be the exclusive property of BASINTEK."

134.    Dr. Kyker unlawfully appropriated Abaco's Trade Secrets by failing to disclose and assign to Abaco "all discoveries, inventions, ideas, or techniques made by CONSULTANT in the performance of the services," and instead claiming such information as his own or as property of his subsequent employer, PV Fluid, and using the Trade Secrets in the course of his employment at PV Fluid.  Likewise, PV Fluid unlawfully appropriated Abaco's Trade Secrets by obtaining and using the Trade Secrets in its business, despite Abaco's rightful ownership.

---

[6] Abaco alleges this claim in the alternative to its TUTSA and DTSA claims to the extent that the misappropriation occurred before September 1, 2013.  Abaco cannot make a determination as to the exact date of misappropriation without discovery.

135.    Dr. Kyker and PV Fluid unlawfully appropriated Abaco's Trade Secrets without the express or implied consent of Abaco.

136.    Defendants' unlawful appropriation was made with the intent to deprive Abaco of the Trade Secrets.  Defendants' filed a series of patent applications (now granted as the Patents-in-Suit) to affect ownership of Abaco's trade secrets, effectively excluding others, including Abaco, from making, using, selling, or importing the invention.

137.    As an unavoidable result of Dr. Kyker's and PV Fluid's misappropriation of Abaco's Trade Secrets, Abaco will be irreparably harmed, as the resources it spent to develop the confidential and proprietary Trade Secrets were destroyed and wrongfully given to a competitor. Dr. Kyker and PV Fluid not only destroyed the secrecy of the Trade Secrets by disclosing them in the patents, but used the Trade Secrets to compete with Abaco and profit at Abaco's expense. Furthermore, Abaco is now precluded from manufacturing, using, offering to sell, or selling stator compounds developed by and for Abaco, because Dr. Kyker wrongfully assigned the Patents-in-Suit to PV Fluid.

138.    Defendants are in a position to continue to cause harm to Abaco.

139.    Upon proof of actual damages, plaintiff is entitled to additional statutory damages of up to $1,000 from defendant under Texas Civil Practice & Remedies Code section 134.005(a)(1).

140.    On information and belief, Dr. Kyker's disclosure and use of Abaco's Trade Secrets, and PV Fluid's acquisition and use of such Trade Secrets, was willful and malicious and entitles Abaco to exemplary damages.

141.    Abaco is entitled to damages for its actual loss or for the Defendants' unjust enrichment.  Because Dr. Kyker and PV Fluid willfully and maliciously misappropriated Abaco's Trade Secrets, Abaco is also entitled to exemplary damages, costs and reasonable attorneys' fees.

## COUNT XIV.

## CIVIL CONSPIRACY

142.    Abaco alleges and incorporates by reference the allegations of the above paragraphs.

143.    On information and belief, PV Fluid and Dr. Kyker agreed and conspired to wrongfully obtain the Trade Secrets and confidential information that Dr. Kyker developed in tandem with Abaco and for Abaco's benefit, and to use that information in PV Fluid's business. PV Fluid and Dr. Kyker reached a meeting of the minds on the objectives set forth above.

144.    On information and belief, to accomplish the object of their agreement, PV Fluid hired Dr. Kyker, who disclosed Abaco's confidential information and Trade Secrets to PV Fluid in violation of his express contractual agreement to maintain the secrecy of such information.  PV Fluid thereby acquired and used that information in its business to compete with Abaco, making a significant gain at Abaco's expense.  Each participant in the scheme is liable for the conduct of the other participants undertaken to advance the purposes of the agreement.

145.    As a proximate result of their actions, Abaco has suffered substantial damages, including the loss of its Trade Secrets and confidential and proprietary information, the resources spent developing that information (which are now public and employed by a competitor), and the profits it could have made from using or selling its technology.

146.    Abaco therefore alleges a cause of action for conspiracy against the Defendants. There is no legal justification or excuse for the actions of PV Fluid and Dr. Kyker.  Because one

or more underlying torts authorize exemplary damages, and because the Defendants' actions were intentional, misleading and malicious, the Defendants are jointly and severally liable for damages.

## JURY DEMAND

Abaco hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

Abaco requests that the Court find in its favor and against Defendants, and that the Court grant Abaco the following relief:

a. Judgment and declaration that one or more of Abaco's employees was wrongly omitted as an inventor of the Patents-in-Suit, and should be properly named as inventors on the Patents-in-Suit;

b. Judgment and declaration that Abaco is the sole owner in equity and law of the Patents-in-Suit and any applications or patents that relate thereto;

c. An order pursuant to 35 U.S.C. § 256 requiring the Director of the United States Patent and Trademark Office to issue a certificate to correct the inventorship of the Patent-in-Suit to add one or more of Abaco's employees as co-inventor(s) of the Patents-in-Suit;

d. Judgment that Dr. Kyker breached the Consulting Agreement;

e. Judgment that Dr. Kyker and PV Fluid misappropriated Abaco's trade secrets under federal and state law;

f. Judgment that Dr. Kyker and PV Fluid conspired to steal the intellectual property of Abaco;

g. Judgment that PV Fluid and/or Dr. Kyker acted willfully, intentionally, deceitfully, and maliciously;

h. Judgment limiting or barring PV Fluid's ability to enforce the Patents-in-Suit;

    i.    Actual damages;

    j.    An injunction enjoining actual and threatened misappropriation;

    k.    Special monetary damages, including compensatory and consequential damages;

    l.    Exemplary damages;

    m.    Disgorgement;

    n.    Abaco's reasonable costs and attorneys' fees;

    o.    Judgment declaring this to be an exceptional case 35 U.S.C. § 285 and awarding Abaco its costs, expenses, and reasonable attorneys' fees;

    p.    Such other and further relief as this Court may deem just and proper.

Dated:  June 3, 2020                Respectfully submitted,

    */s/ Eric Klein* _____
Eric Klein
Texas State Bar No. 24041258
Paige Wright
Texas State Bar No. 24109833
VINSON & ELKINS L.L.P.
2001 Ross Avenue, Suite 3800
Dallas, TX 75201
Telephone: (214) 220-7700
Facsimile:  (214) 220-7716
Email: eklein@velaw.com
Email: pwright@velaw.com

Caroline C. Stewart
Texas State Bar No. 24098477
1001 Fannin St., Suite 2500
Houston, Texas 77002
Telephone: (713) 758-2474
Email: cstewart@velaw.com

**ATTORNEYS FOR ABACO DRILLING TECHNOLOGIES LLC**